# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TAD LEE SAUNDERS,**

    Plaintiff,

    v.                                                                                                             Case No. 17-CV-109

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

## DECISION AND ORDER

Tad Lee Saunders alleges that he became disabled on March 31, 2011, as a result of a number of physical and mental impairments. After the Social Security Administration denied his applications for disability benefits, Mr. Saunders requested and received a hearing before an administrative law judge (ALJ). The ALJ determined that Mr. Saunders was capable of working notwithstanding his impairments. Mr. Saunders now seeks judicial review of that decision.

Mr. Saunders argues that the ALJ committed errors in weighing certain opinion evidence, assessing his subjective statements regarding his symptoms, and assessing his residual functional capacity. The Commissioner contends that the ALJ did not commit an error of law in reaching her decision and that the decision is otherwise supported by substantial evidence. For the reasons that follow, the Court agrees with the Commissioner and therefore will affirm its decision denying Mr. Saunders disability benefits.

I.   **Background**

Tad Lee Saunders was born on February 15th, 1979. Transcript 49. As of June 17, 2013, Mr. Saunders was married with two children, ages seven and eleven. Tr. 50. Mr. Saunders was approximately 5'5" and weighed 130 pounds. He had no income but his wife worked full-time to provide for the household. Tr. 52. Mr. Saunders received his high school equivalency diploma but did not attend college. Tr. 51. He previously worked as a janitor and at Badger Liquor but stopped in 2009 due to physical and mental ailments. Tr. 52.

Mr. Saunders suffers from a number of impairments, including myofascial pain syndrome, fibromyalgia, spondyloenchondrodyplasia, anxiety, depression, and posttraumatic stress disorder. Tr. 342. On April 14, 2011, Mr. Saunders filed applications for disability insurance benefits and supplemental security income, alleging March 31 2011, as his onset date. Plaintiff's Brief 1. After the Social Security Administration denied his applications initially, Mr. Saunders requested a hearing before an ALJ on March 6, 2012. Tr. 110. Mr. Saunders was represented by counsel at the June 17, 2013 hearing; the ALJ heard testimony from Mr. Saunders, Mrs. Saunders, and a vocational expert. Tr. 48-79.

The ALJ followed the five-step sequential evaluation process and on September 19, 2013, she issued a decision unfavorable to Mr. Saunders. Tr. 21-30. The ALJ determined that (1) Mr. Saunders did not engage in substantial gainful activity since his alleged onset date; (2) Mr. Saunders suffered from the following severe impairments: myofascial pain syndrome, fibromyalgia, anxiety,

posttraumatic stress disorder, and depression; (3) Mr. Saunders did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Mr. Saunders had the residual functional capacity to perform light work, except he is limited to no more than occasional stooping or crouching, and he is limited to simple, non-complex work with no public interaction and no more than occasional interaction with coworkers or supervisors; (4) Mr. Saunders could not perform his past relevant work as a bartender, janitor, saw operator, and warehouse worker; and (5) Mr. Saunders remained capable of performing the requirements of various light work occupations. *See* Tr. 23–29. Based on those findings, the ALJ concluded that Mr. Saunders was not disabled.

Thereafter, the Appeals Council denied Mr. Saunders's request for review, Tr. 1–7, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016). Mr. Saunders filed his appeal with this Court without the assistance of counsel on December 24, 2014, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). *See* Complaint, ECF. No. 1. The Court issued its Decision and Order on January 5, 2016, remanding Plaintiff's case to the Commissioner of Social Security for further proceedings. Tr. 405-421. The Appeals Council vacated the final decision of the Commissioner of Social Security and remanded the case to an ALJ. Tr. 514. Subsequently, Mr. Saunders had a second hearing before an ALJ on August 17, 2016. Tr. 362-395. Mr. Saunders was represented by counsel at the August 17, 2016

hearing; the ALJ heard testimony from Mr. Saunders, Mrs. Saunders, and a vocational expert. Tr. 362-395.

The ALJ followed the five-step sequential evaluation process and on October 20, 2016, she again issued a decision unfavorable to Mr. Saunders. Tr. 339-354. The ALJ determined that (1) Mr. Saunders did not engage in substantial gainful activity since his alleged onset date; (2) Mr. Saunders suffered from the following severe impairments: myofascial pain syndrome, fibromyalgia, spondyloenchondrodyplasia, anxiety, posttraumatic stress disorder, and depression; (3) Mr. Saunders did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Mr. Saunders had the residual functional capacity to perform light work except occasional stooping and crouching, and he is limited to simple, routine, repetitive, non-complex work, with occasional interaction with supervisors and coworkers, no public contact, no teamwork, and minimal to no changes in work routine; (4) Mr. Saunders could not perform his past relevant work as a maintenance worker and janitor; and (5) Mr. Saunders remained capable of performing the requirements of various light work occupations. *See* Tr. 342–354. Based on those findings, the ALJ concluded that Mr. Saunders was not disabled.

Mr. Saunders filed this present action on January 24, 2017, seeking judicial review of the Commissioner's decision. The matter was reassigned to this Court after both parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 5 & 7 (citing 28 U.S.C. § 636(c) and

Fed. R. Civ. P. 73(b)). It is now fully briefed and ready for disposition. *See* Plaintiff's Brief, ECF No. 21; Defendant's Memorandum in Support of the Commissioner's Decision, ECF No. 23; and Plaintiffs Reply Brief, ECF. No 27.

**II.     Standard of Review**

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Judicial review is limited to determining whether the Commissioner's final decision is supported by "substantial evidence." *See* § 405(g); *see also Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore*, 743 F.3d at 1120–21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

In reviewing the record, courts "may not re-weigh the evidence or substitute [their] judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v.*

5

*Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Moore*, 743 F.3d at 1121. The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837. Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121.

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003).

## III. Discussion

Mr. Saunders maintains that he is disabled and that the Commissioner's decision to the contrary is not supported by substantial evidence and is contrary to law and regulation. *See* Compl. 3-4.

### A. Legal framework

Under the Social Security Act, a person is "disabled" only if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). The disability must be sufficiently

6

severe that the claimant cannot return to her prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since her alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves her unable to perform the requirements of her past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four." *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

### B. Legal analysis

Mr. Saunders argues that the ALJ improperly weighed the opinions of his treating physician, erroneously evaluated his subjective symptoms, and erroneously

7

assessed his Residual Functional Capacity (RFC). The Court will address each argument in turn.

### 1. Whether the ALJ improperly weighed the opinions of Mr. Saunders's treating physician

Mr. Saunders argues that the ALJ improperly gave "limited weight" to the opinions offered by his treating physician, Lisa Weber, M.D. Section 404.1527 Title 20 of the Code of Federal Regulations, provides a legal framework for how medical opinion evidence is to be weighed and evaluated. An ALJ must give "controlling weight" to a treating source's opinion if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2). If it is determined that a treating source is not entitled to controlling weight under § 404.1527(c)(2), it is weighed under regulatory factors, the same as any other medical opinion. *See* 20 C.F.R. 404.1527(c)(2) ("when we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section. . . .")

With respect to Dr. Weber's opinion evidence, the ALJ here afforded it little weight, concluding that Dr. Weber's opinions did not meet the standards set out by 404.1527(c)(2) to entitle it to controlling weight. *See* Tr. 350. Mr. Saunders maintains that when the ALJ did not accord controlling weight to Dr. Weber's opinions, she failed to apply the factors designated in 20 C.F.R. 404.1527(d), which in itself is a ground for remand. Pl.'s Br. 15-16. The Court disagrees.

According to Mr. Saunders, Dr. Weber became involved with his treatment in 2009. Tr. 377. Although Dr. Weber saw Mr. Saunders fairly frequently at the beginning of their treatment relationship, Ex. 3F, after establishing him on Fentanyl in 2011, Dr. Weber subsequently saw Mr. Saunders approximately twice per year. Exhs. 8F; 13F; 19F; 20F. Mr. Saunders claims that the ALJ improperly relied on the infrequency of treatment when determining the weight that should be given to Dr. Weber's opinions. Pl.'s Br. 15. But § 1527(c)(2)(i) gives an ALJ the authority to consider both the length and frequency of a medical source's treating relationship with the claimant when assessing weight. 20 C.F.R. § 404.1527(c)(2)(i). While it would be impermissible for an ALJ to solely rely on frequency of treatment when weighing a treating source's opinion, here, frequency of treatment was only one of the factors the ALJ considered. *See* Tr. 350.

Dr. Weber opined, in sum, that Mr. Saunders's physical and mental impairments precluded him from working even a part-time job. *See* Tr. 335; Tr. 350; Tr. 750. In weighing Dr. Weber's opinion, the ALJ considered the supportability of the opinion evidence as well as its consistency with other evidence in the record. *See* Tr. 350; *See also* 20 C.F.R. 404.1527(c)(3)-(4). In regard to supportability § 404.1527(c)(3) requires an ALJ to give more weight to a medical opinion supported by relevant evidence, "particularly medical signs and laboratory findings." 20 C.F.R. § 404.1527(c)(3). Dr. Weber's several physical examinations of Mr. Saunders consistently showed that, notwithstanding points of tenderness, Mr. Saunders maintained full range of motion and strength in all extremities. Ex. 8F. Further, in

May 2016, three months before Mr. Saunders went before the ALJ, Dr. Weber's physical examination of Mr. Saunders reflected no abnormalities or significant pain behaviors. Ex. 20F.

The ALJ also found Dr. Weber's opinion to be inconsistent with other evidence in the record, including her own treatment notes. For example, although Dr. Weber opined that Mr. Saunders has difficulty managing his pain at home, Tr. 750, after starting Mr. Saunders on the Fentanyl patch in 2011, Dr. Weber's treatment notes consistently indicated that Mr. Saunders's pain was well-controlled and that he was "able to function for the most part." Ex. 17F. The case record indicates that Mr. Saunders has occasional severe flare ups, but only when participating in high exertional activities, such as competing in a fishing tournament and moving households. Tr. 297; Tr. 688. When Mr. Saunders is not participating in high exertional activities, the record reflects that Mr. Saunders's pain is tolerable and controlled on the Fentanyl patch. Ex. 8F.

Finally, the ALJ found Dr. Weber's opinion to be inconsistent with Mr. Saunders own account of his abilities. Tr. 350. At various times, Mr. Saunders reports being able to tend to his personal care; contribute to taking care of the children; do most of the cleaning; cook occasionally; fish with his kids, although he can no longer fish professionally; and manage his finances. Exhs. 4F; 18F; 19F. As the ALJ points out, these activities involve at least a light level of exertion, suggesting that Mr. Saunders's impairments wouldn't preclude him from all work.

Tr. 350. There is substantial evidence in the record to support the ALJ decision to attribute little weight to Dr. Weber's opinions.

## 2. Whether the ALJ erred in evaluating Mr. Saunders's subjective symptoms

Mr. Saunders next argues that the ALJ improperly evaluated his subjective allegations of disabling symptoms. When considering a claimant's subjective symptoms, the ALJ must follow a two-step process. *See* Social Security Ruling 16-3p; *See also* 20 C.F.R. 404.1529. First, the ALJ must determine whether the individual has "a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Second, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms such as pain and determine the extent to which an individual's symptoms limits his or her ability to perform work-related activities. . . ." *Id*.

An ALJ's evaluation of an individual's symptoms "is entitled to deference" and will not be upset unless it is "'patently wrong,'" *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (quoting *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)), or "divorced from the facts contained in the record," *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). "Further, the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citations omitted).

The ALJ here employed the two-step process in evaluating Mr. Saunders's credibility and found that while Mr. Saunders's medically determinable

11

impairments could reasonably be expected to cause the alleged symptoms, Mr. Saunders's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 46. Mr. Saunders contends that the ALJ violated both steps of the two-step process when determining his credibility. The Court disagrees.

Mr. Saunders claims that the ALJ violated the first step of the credibility evaluation process when she "failed to state which of Plaintiff's symptoms could be caused by the medically determinable impairments." Pl.'s Br. 19. This argument fails to convince because SSR 16-3p requires an ALJ to simply state whether there is a medically determinable impairment and does not require an ALJ to correlate symptoms with the medically determinable impairment. *See* SSR 16-3p; *See also* § 404.1529. Here, the ALJ here determined that Mr. Saunders has medically determinable impairments that could cause his alleged symptoms; the first step of the evaluation process requires no more.

Mr. Saunders further maintains that the ALJ's "other reasons for the credibility determination do not follow the standards for the evaluation of credibility." Pl.'s Br. 20. Citing *Hildebrandt v. Astrue*, Mr. Saunders argues that after establishing that there is a medically determinable impairment that could cause his symptoms, the ALJ could not discredit his statements regarding his symptoms solely on the basis of medical evidence. Pl.'s Br. 20(citing *Hildebrandt v. Astrue*, 2012 U.S. Dist. LEXIS 61842, \*\*26-27 (E. D. Wis. 2012) (holding that in step two of the credibility evaluation process, "the ALJ must consider the entire record,

including the claimant's daily activities; the frequency and intensity of the symptoms; precipitating and aggravating factors")). To be sure, Mr. Saunders's is correct that an ALJ cannot discredit testimony based solely on medical evidence. It is also true that that did not happen in this case.

Lack of support in the medical evidence certainly formed part of the basis for the ALJ's credibility determination. *See* Tr. 346. In assessing the intensity, persistence, and limiting effects of Mr. Saunders's alleged symptoms, the ALJ found that despite Mr. Saunders's claims of debilitating pain, his examinations show that he has full range of motion and strength in all extremities; his treatment notes overall show that his pain was tolerable and well-controlled on the fentanyl patch; he has had occasional increases in dosage but has never been referred to a specialist for pain management; and that he only reports significant increases in pain after engaging in high-exertional activities. Tr. 243; Exhs. 4F; 8F; 13F; 17F; 19F; 20F; Tr. 346-347. The ALJ also found, however, that Mr. Saunders's statements regarding his symptoms and limitations were inconsistent with his presentation. For example, the ALJ notes that during a consultative psychological examination, Mr. Saunders's reported symptoms of extreme pain and cramping, but the examiner observed no correlating pain behaviors. Tr. 348; Ex. 18F. Further, the examiner noted inconsistencies in the way Mr. Saunders presented himself: at times he would walk with a proper gait, and at other times he had a limp that varied in intensity; he initially appeared to have an immobile right hand that later appeared to move quite adequately; and sometimes his movements seemed to be fluid and at other times

not. Ex. 18F. Moreover, to the extent that Mrs. Saunders provided collateral information, it was not always consistent with Mr. Saunders own statements. For example, Mrs. Saunders reported that Mr. Saunders can do all of his activities of daily living, that his medication takes the edge off so he is only sore, and that during the week he has 3.5 good days, and he is good for the most part. Ex. 18F. Accordingly, there is substantial evidence in the record to support the ALJ's credibility determination.

### 3. Whether the ALJ erred in evaluating Mr. Saunders's RFC

Mr. Saunders argues that in determining his RFC, the ALJ failed to comply with the requirements of Social Security Ruling 96-8p and failed to build an accurate and logical bridge from the evidence to her conclusion. Because the ALJ articulates the basis for her RFC assessment, the Court disagrees.

Between steps three and four of the sequential evaluation process, the ALJ must determine the claimant's RFC—that is, the most she can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); see also Social Security Ruling No. 96-8p, 1996 SSR LEXIS 5, at *5 (July 2, 1996). ALJs must assess a claimant's RFC "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements.'" SSR No. 96-8p, 1996 SSR LEXIS 5, at *5–6; § 416.945(a)(3). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR No. 96-

14

8p, 1996 SSR LEXIS 5, at *19. "The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id.

The ALJ here determined that Mr. Saunders had the RFC to perform light work except occasional stooping and crouching, and further limited him to simple, routine, repetitive, non-complex work, with occasional interaction with supervisors and coworkers, no public contact, no teamwork, and minimal to no changes in work routine. Tr. 345. Mr. Saunders claims that the ALJ improperly relied on the opinions of Drs. Walcott, Chan, Spear, and Kojis in her RFC assessment. Pl.'s Br. 26.

Social Security Ruling 96-8p requires an ALJ to consider and address medical source opinions from both treating doctors and State Agency doctors. *See* SSR 96-8p. In August 2011, Dr. Walcott opined that the evidence of record did not establish the existence of a severe physical impairment. Tr. 270; Tr. 350. In December 2011, Dr. Chan found that Mr. Saunders was capable of performing medium-exertional work. Ex. 10F. Mr. Saunders criticizes the ALJ for relying on these opinions because the doctors did not have the benefit of medical source statements from Mr. Saunders's treating doctor at the time they rendered their opinions. Pl.'s Br. 26. In making this criticism, Mr. Saunders overstates the importance to the ALJ of Dr. Chan's and Dr. Walcott's opinions. In fact, the ALJ found that their opinions only warranted some weight because the evidence as a whole warrants a restriction to light work. Tr. 351. Mr. Saunders's overreliance criticism is therefore misplaced.

15

With regard to State agency psychological consultants Drs. Spear and Kojis, Mr. Saunders argues that the ALJ failed to build a logical bridge from the evidence to her conclusion when she failed to state which part of their opinions she agreed with. Pl.'s Br. 26. Drs. Spear and Kojis opined that Mr. Saunders's mental impairments resulted in no restriction in activities of daily living; moderate limitations in social functioning; mild limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation. They opined that Mr. Saunders had moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Tr. 351; Ex. 7F.

The ALJ accorded their opinions partial weight. When discussing Drs. Spear's and Kojis's opinions, the ALJ explained that she gave their opinions partial weight because (1) the objective evidence in the record fails to substantiate a finding that Mr. Saunders has moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, or being punctual, and (2) in light of Mr. Saunders's subjective reports she found that he experiences moderate restriction in activities of daily living. Tr. 351. This all makes good sense and will not be disturbed.

Finally, Mr. Saunders criticizes the ALJ for failing to discuss the opinions of Dr. Khorshidi and Dr. Cremerius. As the Commissioner points out in her brief, to the extent that the ALJ erred in failing to discuss Drs. Khorshidi and Cremerius's opinions, the error was harmless. Def.'s Br. 12. Under a harmless error analysis, the

party that "seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). In June 2015, Dr. Cremerius opined that Mr. Saunders had moderate limitations in social performance; that he should be reduced to light work; and that he meets the basic mental demands of unskilled work. Tr. 501. Dr. Khorshidi opined that Mr. Saunders would be capable of understanding simple instruction; that he would be capable of performing simple tasks; that he has social interaction limitations and would be limited to occasional contact with co-workers; and that he would be limited to light work.

Both Dr. Cremerius's and Dr. Khorshidi's opinions are consistent with the ALJ's RFC assessment, and are thus not prejudicial. There is substantial evidence in the record to support the ALJ's RFC determination. The ALJ's error was harmless.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the ALJ did not commit reversible error in finding that Mr. Saunders was not disabled as of March 31, 2011. The Court therefore will affirm the ALJ's decision denying Mr. Saunders's claim for disability benefits.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of September, 2018.

                                                  **BY THE COURT:**

                                      *s/ David E. Jones*
                                      DAVID E. JONES
                                      United States Magistrate Judge